# CHARLESTON.

STATE *ex rel.* AMERICAN TITLE & INDEMNITY COMPANY *v.* NAAMAN JACKSON, COMMISSISONER OF BANKING.

Submitted December 2, 1924.   Decided December 9, 1924.

BANKS AND BANKING—*Comissioner of Banking Has No Control Over Corporation Organized Under Code Chapter 54-c, Section 9.*

The commissioner of banking has no supervision or control of a corporation chartered under Section 9, Chapter 54-c, Code (Barnes' 1923), and cannot therefore be compelled by mandamus to issue to it a certificate of authority to begin business on the ground that such corporation comes within the purview of Sections 78-*a*-(5), 78-*a*-(6), and 78-*a*-(7) of Chapter 54, Code, as amended by Chapter 31 Acts of the Legislature of 1923.

Mandamus in case of American Title and Indemnity Company against Naaman Jackson, Commissioner of Banking, to compel him to issue a certificate of authority to the said corporation to begin business.

*Writ refused.*

*Mendahl, Pool, Porter & James,* for relator.

*E. T. England,* Attorney General, and *Charles Ritchie,* Assistant Attorney General, for respondent.

LITZ, JUDGE:

The relator is a corporation chartered under Section 9, Chapter 54-C, Code 1923, which provides that every company heretofore or hereafter incorporated under the laws of this State for the purpose of insuring owners of, and other persons interested in, real estate against loss by reason of

defective titles, liens and encumbrances, or for the purpose of guaranteeing the fidelity of any person holding a position of public or private trust, or for guaranteeing the performance of any contract, or for insurance of any kind, other than upon the life of any person or against loss by fire, shall have the power and right:

"(1) To make insurance of every kind pertaining to, or connected with, titles to real estate, and notwithstanding the provisions of section three of chapter fifty-two of the code of this State, as amended by section one of chapter thirty-five of the acts of one thousand nine hundred and one, or any other provisions of such code, to buy, sell and guarantee bonds, stocks, loans, and evidences of indebtedness, whether of persons or corporations, and make, execute and perfect such and so many contracts, agreements, and other instruments as may be required therefor.

"(2) To examine titles to real property and chattels real, to procure and furnish information in relation thereto, and to make and guarantee the correctness of searches for all instruments, liens or charges affecting real or personal property.

"(3) To act as agent for the purpose of issuing, registering or countersigning, purchasing or selling, the certificates of stock, bonds, or other obligations of any corporation, association, county, school district, magisterial district or municipality, State or public authority, and to receive or manage any sinking fund thereof, on such terms as may be agreed upon.

"(4) To make insurance for the fidelity of persons holding positions of responsibility and trust.

"(5) To become sole surety in any case where by law one or more sureties may be required for the faithful performance of any trust, office, duty, action or engagement.

"(6) To take by purchase or otherwise and receive and hold money and all such pieces of real property as may have been or may hereafter be the subject of any insurance or security for any loan made by said company under the powers conferred by its certificate of incorporation and to

convey and dispose of the same in any manner which it may deem proper.

"(7) To act as surety for the faithful performance of any contract entered into with any person, firm or municipality, or other corporation, or with any State or government or public authority, by any person or persons, corporation or corporations.

"(8) To become sole surety for the faithful performance of the duties of any national, State, county or municipal officer, or employee, and to execute such bonds or recognizances as may be required by law in such cases.

"(9) To become surety upon any writ of error, supersedeas or appeal, or in any proceedings instituted in any court of this State or of the United States held within this State, in which security may be required.

"(10) To become surety for the faithful performance of the duties of any clerk, officer or employee of any corporation, firm or individual.

"(11) To issue policies of insurance against loss from any cause, other than by the death of any person or by fire.

"(12) For the purpose of indemnifying and saving harmless any company executing any bond or policy under the provisions of this act, such company is authorized to receive and hold on deposit and in trust as security, estates, real and personal, including the notes, bonds and obligations of States, counties or municipal corporations, individuals, firms, or corporations, and the same to purchase, collect and adjust, settle and dispose of, in case of default upon, or loss under, such bond or policy for which such property has been received as indemnity, or as collateral security, without proceedings at law or in equity, and for such price and upon such terms as may be agreed upon between such company and those persons making such deposits or creating such trusts.

"(13) To become surety for the payment of all damages that may be assessed and directed to be paid for lands or property taken in the building of any railway, or for the purpose of any railway, or for the opening of streets or roads, or for any purpose whatever where land or other property is authorized by law to be taken.

"(14) To stipulate, provide for and take indemnity from persons, firms or corporations for whom such company shall so become surety, and enforce any bonds, contract agreement, pledge, or other security, made or given for that purpose."

The commissioner of banking having refused the relator a certificate of authority to begin business, under Section 78-a-(6) of Chapter 54, Code 1923, as amended by Chapter 31, Acts Legislature of 1923, on its petition an alternative writ was awarded against him to show cause why the said certificate should not be granted. The commissioner in his return says that the relator corporation does not come within his jurisdiction and that he is therefore without authority to issue the requested certificate. He also defends on the ground that the charter, constitution and by-laws of the corporation do not provide a safe, just and equitable plan for the management of its business.

Does the corporation come within the jurisdiction of the commissioner of banking? The relator, insisting on such jurisdiction by the commissioner, relies upon two propositions: (1) that the corporation has been organized for the purpose of buying, selling, discounting and dealing in mortgages, bonds, notes, commercial paper and other securities within the meaning of Section 78-a-(5), Chapter 54 Code, as amended by Chapter 31 Acts of the Legislature of 1923; and (2) that it is a surety company doing a banking business in contemplation of Section 81-a-(15), Chapter 54 Code.

Section 78-a-(5) of Chapter 54 as amended places under the supervision of the commissioner of banking all savings banks, cooperative banking associations, trust companies engaged in a general banking business, building and loan associations, mutual investment associations, mortgage companies, mortgage and discount companies, and all associations and corporations of a like kind or character doing business in this State, *and all associations and corporations,* except licensed stock brokerage companies, *organized for the purpose, or engaging in the business of buying, selling, discounting or dealing in mortgages, bonds, notes or other securities or commercial paper.* Section 78-a-(6) requires every

such association or corporation organized under the laws of this State and desiring to operate within the State, to obtain from the commissioner of banking a certificate of authority to begin business, by filing with him a certified copy of its charter, constitution and by-laws; and declares it an offense on the part of the association or corporation and its officers to transact any business except the execution of its articles of incorporation, adoption of a constitution and by-laws, and election of directors and officers, until it shall have procured such certificate of authority. This section further provides that the commissioner shall carefully examine the charter, constitution and by-laws of the association or corporation and if he find that they provide a safe, just and equitable plan for the management of its business, he shall issue such association or corporation a certificate of authority permitting it to begin business; but if he determine the provisions of the charter, constitution and by-laws to be impracticable, unjust, inequitable or oppressive, or lacking in security to any class of shareholders or stockholders, he shall withhold his certificate of authority.

Relator contends that having the power by its charter, under the first clause of Section 9, Chapter 54-C Code, "to buy, sell and guarantee bonds, stocks, loans and evidences of indebtedness," it comes within the provisions of Section 78-a-(5), 78-a-(6) and 78-a-(7), Chapter 54, as amended by Chapter 31 Acts of the Legislature of 1923, providing for supervision by the commissioner of banking of associations or corporations "organized for the purpose of or engaged in the business of buying, selling, discounting or dealing in mortgages, bonds, notes or other securities, or commercial paper." The plausibility of this view, however, is met by a considering of the provisions of Chapter 54-C governing the charter powers of the corporation. Section 12 of that chapter prescribes, as a condition precedent to the exercise by such corporation of any power or right mentioned in the first, second, third, fourth, fifth, sixth, seventh, eighth, tenth, eleventh and twelfth clauses of Section 9, the filing with the secretary of state a duly authenticated certificate showing its capital to be at least six hundred thousand dollars, fully paid

and unimpaired. Section 15 also subjects the corporation, in the exercise of any of the rights or powers conferred under said Section 9, to the same examination and supervision by the auditor, ex-officio insurance commissioner, as is now provided for fire insurance companies organized under laws of this State. These legal requirements constitute clear reasons against the contention that the relator comes within the supervision of the commissioner of banking, under Sections 78-a-(5), 78-a-(6) and 78-a-(7), Chapter 54, as amended. The only powers the relator can exercise before the filing of the required certificate with the secretary of state, mentioned in clauses nine, thirteen and fourteen of Section 9, Chapter 54-C, come strictly within the functions of a surety company.

No officer can confer any other authority upon the corporation before it has filed with the secretary of state the certificate showing its capital stock to be at least six hundred thousand dollars fully paid and unimpaired. Moreover, the power of the corporation under the first clause of said Section 9 to ''buy, sell and guarantee bonds, stocks, loans and evidences of indebtedness,'' is merely incidental to the business of a surety company, to be exercised after the corporation has been fully authorized to do business. If the charter or governing statute prescribes conditions precedent to the right to commence business and exercise the powers conferred, they must be complied with before the corporation can lawfully enter upon the exercise of its powers. 14-A C. J. 303.

We are therefore clearly of the opinion that Sections 78-a-(5), 78-a-(6) and 78-a-(7) of Chapter 54, as amended, has no application to a surety company organized under Sec. 9, Chapter 54-C, with the incidental authority to buy, sell and guarantee bonds, stocks, loans and evidences of indebtedness; but applies to associations or corporations organized primarily for the purpose of carrying on such transactions as its principal business.

We think also that the corporation is without powers enabling it to do a banking business, and is therefore not subject to supervision by the commissioner of banking under Section 81-a-(15) of Chapter 54. In fact, Section 13, Chap-

ter 54-C, specifically prohibits such corporation from receiving money on deposit, a function essentially necessary to bring its business within the proper definition of "banking." 7 C. J. 476, 477.

The commissioner of insurance having been given supervision of all the business of the corporation in question, we do not think an intention on the part of the legislature to place any of its affairs under the joint jurisdiction of the commissioner of banking and the commissioner of insurance has been shown.

Being of the opinion, therefore, that the commissioner of insurance has sole supervision of the relator corporation, we deny the writ, without passing upon respondent's second ground of defense.

*Writ refused.*